(No. 35050.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AMOS JONES, Plaintiff in Error.

*Opinion filed May 22, 1959.*

KLINGBIEL, J., dissenting.

HOWARD T. SAVAGE, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago,

(FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and EDWIN A. STRUGALA, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Amos Jones, the defendant below, was indicted by the grand jury in Cook County for the possession of one package of narcotic drug, to-wit: "opium, that is to say, heroin." He was arraigned on February 20, 1958, and entered a plea of not guilty. On May 14, 1958, he filed a petition to suppress certain evidence which the police claimed to have discovered in their search of defendant upon his arrest without warrant. The court declined to suppress the evidence. Defendant then waived trial by jury and was tried before the criminal court of Cook County. He was found guilty of unlawful possession of narcotic drugs as charged in the indictment, and was sentenced to the Illinois State Penitentiary for a term of not less than two years and not more than ten years. He now brings this writ of error asserting (1) that his arrest and the search of his person without a warrant were unlawful and violated his constitutional rights, and the failure of the court to suppress the evidence found by the unlawful search of his person is prejudicial error, (2) that the competent evidence fails to prove the material fact of possession of narcotic drugs, (3) that the trial of defendant was unfair due to entry and acceptance of an oral stipulation of defendant's entire defense, and (4) that the trial court erred in failing to insist that all counsel avoid practices depriving defendant of his right to a fair and regular trial.

At the hearing upon the motion to suppress evidence, Harrison Harvick, the arresting officer, testified. He said he arrested the defendant on January 4, 1958, then having no warrant for his arrest and no search warrant, and that no violation of law was committed in his presence. He was told by an informer, Emma Brown, that her source of nar-

cotics was Amos Jones. At his request, Emma Brown called Jones's girl friend, Daisy, who said Jones wasn't there but she would try to contact him. This call was made in Harvick's presence and he checked the number, finding it registered in the name of Daisy Mims.

He said that Daisy called back later and said Jones would be at Emma's apartment about noon, to bring some narcotics. Emma Brown described Jones to the officer. He waited until he saw a cab drive up, a colored man alight and ring the bell. The officer then went to the second floor landing, identified himself, arrested Jones and searched him, finding one-half ounce of white powder which he later field tested and found to be an opium derivative. He related that Jones was unable to talk, but wrote a note stating that he had had an operation on his throat.

Upon the trial the officer testified to substantially the same facts, and added that he took the white powder to the detective bureau desk, inventoried it, then took it to the crime laboratory. The laboratory returned a report, People's exhibit 1, which stated the chemist's analysis of the powder as containing 26.6 grains of heroin.

Defendant's counsel stipulated that this was the report of whatever was turned over to the laboratory by the officer, but refused to stipulate that it was taken from de-fendant's pocket.

Defendant's counsel informed the court of defendant's inability to talk, and to save the court's time stipulated that defendant's testimony would be that he denies he had the property complained of at the time of his arrest. This stipulation was upon the defendant's own motion, in the presence of defendant, and confirmed by the defendant who nodded his head when asked if he denied that he com-mitted the crime charged.

Counsel then presented arguments in which defendant called attention to the failure of the People to produce Emma Brown and Daisy Mims. The court stated that he

was more inclined to believe the officer than the defendant, and found defendant guilty.

Defendant contends that his arrest and the subsequent search were unlawful, as the officer had no warrant for either purpose, and was not made within the purview of section 4 of division VI of the Criminal Code, (Ill. Rev. Stat. 1957, chap. 38, par. 657.) That section of the statute provides: "An arrest may be made by an officer or by a private person without a warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

It is clear that neither the constitution of the United States nor of Illinois forbids all searches and seizures. The prohibition is only against unreasonable searches and does not extend to immunity from search upon a lawful arrest. (*Harris* v. *United States,* 331 U.S. 145, 150, 91 L. ed. 1399; *People* v. *Clark,* 9 Ill.2d 400, 404.) It has long been recognized that arresting officers have a right to search the person of the one arrested as an incident to a valid arrest. (*United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653.) An arrest without a warrant is lawful if a criminal offense has in fact been committed and the arresting officer has reasonable grounds for believing that the person arrested committed it. *People* v. *Boozer,* 12 Ill.2d 184, 187; *Draper* v. *United States,* 358 U.S. 307, 3 L. ed. 2d 327, 79 S. Ct. 329.

"Reasonable cause" or "reasonable grounds" in such a situation, means something less than evidence which would result in conviction. (*Locke* v. *United States,* 7 Cranch 339, 3 L. ed. 364, cited in *Brinegar* v. *United States,* 338 U.S. 160, 175, 93 L. ed. 1879.) There is a large difference between that which is required to prove guilt in a criminal case and that which is required to show probable cause for arrest or search, as well as the tribunals which determine

them, and therefore a like difference in the *quanta* and modes of proof required to establish them. (*Brinegar* v. *United States,* 338 U.S. 160, 172, 173; *Draper* v. *United States,* 358 U.S. 307, 3 L. ed. 2d 327, 79 S. Ct. 329, 332.) Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he had reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Carroll* v. *United States,* 267 U.S. 132, 162, 69 L. ed. 543, 45 S. Ct. 280, 288; *Draper* v. *United States,* 358 U.S. 307, 3 L. ed. 2d 327, 79 S. Ct. 329; *People* v. *La Bostrie,* 14 Ill.2d 617, 622.

This case is strikingly similar in most of its aspects to that of *Draper* v. *United States,* 358 U.S. 307, 3 L. ed. 2d 327, 79 S. Ct. 329. The arresting officer had never before seen the accused, had received information that the accused would be unlawfully possessed of narcotics, and had received a description of the accused from the informant. The arrest and search were made in that case, without warrant, and only upon the information from the informant, yet the court held that the officers had reasonable cause to believe that the accused was in the commission of a criminal offense. Upon the state of the record before us, we are of the opinion that this arresting officer was informed of sufficient facts to influence a prudent, cautious man to a reasonable belief that defendant was guilty of the commission of a criminal offense. Such a reasonable belief is sufficient to support an arrest and a subsequent search of the defendant's person without warrant, under the Illinois law. (*People* v. *Tillman,* 1 Ill.2d 525; *People* v. *Henneman,* 373 Ill. 603.) It follows, therefore, that the property found upon defendant's person in the course of the search was proper to be received in evidence. There was no unlawful arrest or search of defendant, and the court did not err in refusing to suppress the evidence found upon defendant's person.

Defendant further contends that the competent evidence failed to prove that he was in the possession of narcotic drugs at the time of his arrest. He complains that the white powder allegedly removed from his person at the time of his arrest was neither received in evidence, nor properly proved to be a narcotic drug.

The record discloses that the arresting officer testified that he took a package of white powder from defendant's person, that he made a field test of it, and that this test indicated the powder to be a derivative of opium. Defendant's counsel interposed no objection to this testimony. The officer further testified that he delivered this powder to the crime laboratory, and received a receipt which was introduced into evidence. He later received a laboratory report of the chemists' analysis, and the name of the chemist who performed the analysis. This report was offered in evidence as People's exhibit 1, whereupon defendant stipulated that the report was an analysis of whatever the officer turned over to the crime laboratory, and that the powder was heroin, but refused to stipulate that the package was taken from the person of defendant.

In view of this stipulation and the officer's testimony that he took the powder from defendant's person, we cannot say that the trial court erred in finding that defendant was guilty of the possession of narcotic drugs. The objection of defendant that there is a failure to prove the qualifications of the chemist is not well taken. Defendant cannot now be heard to complain when his counsel, of his own choosing, made no objection to the lack of qualification proof, and stipulated to the correctness of the report. (*People* v. *Pierce*, 387 Ill. 608; *People* v. *Carrington*, 13 Ill.2d 602.) It is true that the court knew that defendant could not speak, but the record shows that he could hear and could otherwise communicate with his counsel.

Proof of the *corpus delicti* (possession of narcotic drugs) is shown by the evidence. The facts of the dis-

covery, field testing, delivery, and analysis of the powder are in the record. Defendant stipulated that the powder was heroin, and the analysis is corroborated by the field test result. Contrary to defendant's complaint, the proof of the *corpus delicti* does not depend upon a confession of the accused, which the defendant claims was the effect of the stipulation entered in this case, as was the case in *Williams* v. *People*, 101 Ill. 382, and *People* v. *Ruiz*, 403 Ill. 295.

Defendant insists his trial was "unfair" by reason of the acceptance, by the court and all the counsel, of a brief, undetailed, oral stipulation of his defense. Defendant's counsel thoroughly examined the People's witness. In defendant's presence, his counsel stipulated to the correctness of the chemist's analysis. Defendant, himself, acknowledged to the court that he denied commission of the crime charged. His counsel stipulated that he denied ever having possessed the property analyzed by the crime laboratory. Defendant was, at all times, present in open court, and represented by counsel of his own choosing who ably presented his motion to suppress the white powder as evidence. We are not informed of any other defense that defendant could have employed.

In the *Ruiz case*, 403 Ill. 295, the court said it was not afforded the benefit of all the evidence and all of the defenses which should have been raised for the defendant in that case. Such is not true here, so far as we are apprised. The contention that defendant was poorly represented cannot be heard where he chose his counsel, and he makes no showing as to the respects in which his counsel was incompetent or remiss. *People* v. *Carrington*, 13 Ill.2d 602.

Defendant finally contends that the trial court failed to give him a fair and regular trial. He waived trial by jury and at no time advised the court of any objection to the trial proceedings, or of any claim of deprivation of his constitutional rights, by the medium of open objection during the trial or by post-trial motion. He cannot now be

heard to so complain. (*People* v. *Bute,* 396 Ill. 588; *People* v. *Jackson,* 4 Ill.2d 296.) We have adequately, and repeatedly, reviewed this same objection in earlier portions of this opinion, and deem it unnecessary to further discuss the "fairness" of defendant's trial. His trial was fair and regular.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE KLINGBIEL, dissenting:

I cannot accept the decision that there was no unlawful arrest or search in this case. For reasons which are expressed by the dissenting opinion of Mr. Justice Douglas in *Draper* v. *United States,* 358 U.S. 307, 3 L. ed 2d 327, 333, I think the court has failed to give practical meaning to the words and substance of the constitutional guaranty.