**People of the State of Illinois, Plaintiff-Appellee, v. Earl Clarence Jones, Defendant-Appellant.**

**Gen. No. 51,713.**

First District, First Division.

September 16, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert B. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Earl Clarence Jones, was charged in an indictment with having committed the crime of theft on August 12, 1964, ". . . in that he knowingly obtained unauthorized control over a semi-tractor and trailer and nine thousand one hundred sixteen pounds of automobile tires, of the value of more than one hundred fifty dollars; the property of Saginaw Transfer Company, Inc., a corporation, intending to deprive said Saginaw Transfer Company, Inc., permanently of the use and benefit of said property, in violation of Chapter 38, Section 16–1(a) of the Illinois Revised Statutes, 1963 . . . ." The defendant waived his right to a jury, and after a trial, he was found guilty by the trial judge of the offense charged. Judgment having been entered on said finding, the defendant was sentenced to the State Penitentiary for a term of from two to five years. He appeals from the finding of guilty and the judgment entered thereon, contending that the State failed to prove him guilty beyond a reasonable doubt.

Herbert Jornd, an employee of Saginaw Transfer Company, which is located at 2800 South Lock Street, testified that as he was driving a truck through the company yard shortly after midnight on August 12, 1964, he saw

the defendant walk towards a 1964 Ford Diesel tractor-trailer owned by Saginaw and climb into the truck's cab. Jornd said "hi" to the defendant, but received no response. Shortly thereafter, Jornd saw the truck in which the defendant had been sitting going down the street away from the Transfer Company. Jornd then told his supervisor, James Mitchell, about the disappearance of the tractor-trailer.

James Mitchell, assistant terminal manager for Saginaw, testified that after Jornd had informed him that the truck had been driven away, he called the police and went out on his own, "scouting" for the unit. He found the missing truck stopped at a viaduct at 2800 Loomis Street. At the time Mitchell arrived the defendant was attempting to back the truck away from the viaduct which was too low to allow the truck to pass under it. Mitchell asked the defendant what he was doing. The defendant replied that he had been on a bus when he saw the missing unit abandoned at the viaduct, and that he got off the bus to investigate; he further stated that he was in the process of attempting to return the unit to Saginaw when Mitchell arrived on the scene. Mitchell further testified that the viaduct at 2800 Loomis is about a half mile from the Transfer Company. Mitchell stated that it appeared to him that the defendant was under the influence of alcohol.

Detective Richard Kereta of the auto theft unit of the Chicago Police Department testified, that in response to a police radio call, he proceeded to the viaduct at 2800 Loomis to investigate the report that a trailer had been stolen from Saginaw. When he arrived the defendant and Mitchell were engaged in a "scuffle." Kereta arrested the defendant, and then took him to police headquarters. At headquarters, the defendant repeated the explanation he had given to Mitchell for his activities concerning the truck. On cross-examination Kereta testified that at the time he arrested the defendant he had an opinion that

the defendant had been drinking, but that he was not under the influence of alcoholic beverages. He explained that the defendant didn't slur his words and he didn't stumble; "I would say at that time that he'd just been drinking."

Myrtle Jones, defendant's wife, was called as a witness for the defense, and she testified that she was extremely ill on the night her husband was arrested. The defendant stayed with her for part of the evening; however, after several neighbors arrived to look after her, he told her he was going to get a few hours of work in, leaving the house at about midnight. Mrs. Jones further testified that she didn't believe her husband had been drinking when he left for work.

The defendant took the stand in his own behalf and testified that he was employed by Saginaw as an inspector of tractors and trailers, and that his duties did not include driving trucks outside of the company yard. Defendant's normal working hours were from 7:30 p. m. to 3:30 a. m. He further testified that at about 6:45 p. m. on August 11th he called his foreman at Saginaw and told him that he would be a little late because his wife was seriously ill and he might have to take her to the hospital. At about midnight he took a bus to work; he had never before reported for work so late in his shift. Defendant testified that as he walked through the gate at Saginaw he saw a man run from behind two parked trucks and climb into the cab of the aforementioned Ford truck. Defendant stated that he ran over to the truck to question the unidentified man; however, the latter refused to answer his questions, and proceeded to pull out of the yard into the street, with the defendant hanging onto the truck's door. According to the defendant, when the unidentified man got to the viaduct at 2800 Loomis he jammed on the truck's brakes, throwing the defendant from the vehicle onto the pavement. When the defendant got up he saw the unidentified man running

368

away. The defendant then tried to back the truck away from the viaduct to return it to Saginaw; while he was attempting to do this, Mitchell arrived. The defendant denied that he had stolen the tractor-trailer from Saginaw.

█ █ The defendant contends that the State did not prove beyond a reasonable doubt that he possessed the felonious intent necessary to convict him of theft, arguing that (1) the State failed to show that he intended to permanently deprive Saginaw of the use of its truck; and (2) that at the time of the taking he was so intoxicated that he was incapable of forming the requisite intent to steal. As to defendant's first point, we agree with him that to justify a conviction for theft the evidence must establish beyond a reasonable doubt that he intended ". . . to deprive the owner permanently of the use or benefit of the property . . . ." Ill Rev Stats 1965, c 38, § 16–1(d)(1). However, we cannot agree with him that the evidence introduced only demonstrated that he ". . . was drunk and his riding in the truck was really nothing but a joy ride."

█ In People v. Baker, 365 Ill 328, 6 NE2d 665, a case in which the defendant contended on appeal that the State had not proved the felonious intent necessary to constitute the crime of larceny, the Illinois Supreme Court, in affirming the conviction, stated: "Intent may seldom be proved by direct evidence for the reason that one may not know what is in the mind of another, but intent may be deduced from acts committed and circumstances in evidence." At pp 332, 333. The question of intent is one to be determined by the trier of fact from an examination of the facts and circumstances introduced in evidence. People v. Price, 81 Ill App2d 111, 225 NE2d 453. In the instant case the trial judge was presented with conflicting versions as to how the defendant came into the possession of the missing vehicle. It was solely within his province, as trier of fact, however, to resolve these con-

flicts, for it was for him to determine the weight of the evidence and the credibility of the witnesses. People v. Morgan, 20 Ill2d 437, 170 NE2d 529. The trial judge could have found on the basis of the evidence introduced that the defendant arrived at the Saginaw yard at about midnight, and without reporting for work, proceeded to drive the Ford truck away from the company premises, an act which he was not authorized to perform. In addition, it was uncontradicted that the defendant was apprehended by a Saginaw employee while he was in sole control of the truck, attempting to back it away from a viaduct under which it would not pass. From these facts and circumstances the trial judge could properly have inferred that the defendant took the truck from the Saginaw premises with the intention of depriving Saginaw permanently of its use.

Although the defendant attempted to explain his possession of the truck, and claimed that he was attempting to return it when he was arrested, the trial judge was not obligated to believe his testimony; and his exclusive possession of the recently stolen Saginaw vehicle was, in and of itself, sufficient to prove him guilty of theft beyond a reasonable doubt. People v. Garrett, 49 Ill App2d 296, 200 NE2d 7. We will not override the finding of the felonious intent by the trier of fact in a situation where the defendant maintained the stolen property as his own until his apprehension, and where there is no fact or circumstance indicating that he intended to return the property to its rightful owner, except for his prompt apprehension and contradictory explanations. People v. Heaton, 415 Ill 43, 46, 112 NE2d 131.

Finally, defendant contends that his felonious intent was not established beyond a reasonable doubt because the evidence proved that he was too intoxicated to entertain said intent. In order for intoxication to constitute a valid defense the defendant must show that his

370

inebriated condition was so great as to prevent him from forming the intent essential to the crime charged. People v. Reynolds, 27 Ill2d 523, 190 NE2d 301. Whether the foregoing situation is indeed the case is a question of fact to be determined by the trier of fact on the basis of the evidence introduced before him. People v. Cozzie, 397 Ill 620, 74 NE2d 685. We have examined the record and are satisfied that the defendant was not so intoxicated as to negate the existence of an intent to permanently deprive the owner of the truck of its property. See People v. Strader, 23 Ill2d 13, 177 NE2d 126. Although there was evidence to the effect that the defendant had been drinking, this evidence did not show that the defendant was so intoxicated as to prevent him from forming an intent to permanently deprive Saginaw of its truck. The judgment of the Criminal Division of the Circuit Court is, therefore, affirmed.

Affirmed.

ADESKO and MURPHY, JJ., concur.