(No. 37424.—

THE PEOPLE *ex rel.* Theodore J. Isaacs, Director of Revenue, Appellant, *vs.* ROGER H. JOHNSON, Appellee.

*Opinion filed November 30, 1962.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, GEORGE W. SCHWANER, JR., RAYMOND S. SARNOW, A. ZOLA GROVES, and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellant.

JOHN J. KRITZER and KENNETH E. CRITSER, both of Monmouth, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This case raises the constitutionality of sections 5a, 5b and 5c of the Retailers' Occupation Tax Act, (Ill. Rev. Stat. 1961, chap. 120, pars. 444a, 444b and 444c,) as amended in 1961.

The Director of Revenue filed a petition for writ of *mandamus* against the circuit clerk of Warren County to

compel him to enter judgment on certain final assessments and jeopardy assessments. The clerk accepted certified copies of the assessments for filing but refused to enter judgments on the ground that the act as amended is unconstitutional under the due-process and separation-of-powers clauses of the State and Federal constitutions. The circuit court of Warren County held sections 5a, 5b and 5c to be unconstitutional and denied the petition for *mandamus*. The Director appealed to this court.

Section 5a provides that at the expiration of the time within which a taxpayer may file suit for judicial review, the Department may file a final assessment and the clerk shall immediately enter judgment for that amount. The judgment bears interest as other judgments and execution shall issue upon the Department's request.

Section 5b authorizes the Department to issue a jeopardy assessment if it finds that the taxpayer is about to depart from the State, or to conceal himself or his property, or that the proceedings will be prejudiced unless brought without delay, or that collection will be jeopardized by delay. Notice of the jeopardy assessment may then be given the taxpayer with a demand for immediatae payment of the tax, plus a penalty of 10% and a certified copy of the jeopardy assessment may be filed with the clerk immediately.

Section 5c provides as follows:

"If the taxpayer, within 5 days from notice of the jeopardy assessment provided for in section 5b of this Act (or within such extension of time as the Department may grant), furnishes evidence satisfactory to the Department, under the regulations prescribed by the Department, that he is not in default in filing returns or remitting tax under this Act, or that he will duly return and pay the tax or post bond satisfactory to the Department conditioned upon payment of the tax finally determined to be due, then such tax shall not be payable prior to the time and manner otherwise fixed for its payment under this Act, and the person assessed

shall be restored to the rights granted him in the absence of a jeopardy assessment under this Act. Upon satisfaction of the jeopardy assessment, the Department shall order the bond canceled, securities released and judgment vacated."

The petitioner contended in his initial brief that the respondent has no standing to challenge the constitutionality of this legislation, but properly abandoned that position in the reply brief and in oral argument. Despite some early holdings to the contrary, we now recognize that public officials may question the constitutionality of legislation. *People ex rel. Swartchild & Co.* v. *Carter*, 376 Ill. 590; *People ex rel. Castle* v. *Wright*, 8 Ill.2d 454; *Bowes* v. *Howlett*, 24 Ill.2d 545.

We first examine the legislation to see if it violates due process. Under section 5b there is unbridled discretion in the Department to issue a jeopardy assessment for any amount which it finds to be due, plus a 10% penalty and to immediately file a certified copy of the assessment upon which a circuit clerk is directed to enter judgment. The legislation contemplates a judgment in a court of record without notice or an opportunity to be heard prior to its entry. True, section 5b provides that notice of the findings and demand for immediate payment shall be given the taxpayer, but there is no fixing of a time interval between such notice and judgment. Nor does the 5-day period within which a taxpayer may furnish evidence under section 5c give him an interval for hearing between notice and judgment, since it is the plain intent that notice be given and judgment taken simultaneously.

This procedure offends the very essence of due process which requires notice, an opportunity to be heard in an orderly proceeding, and the right to the protection of a taxpayer's rights before a court of competent jurisdiction. (*Griffin* v. *County of Cook*, 369 Ill. 380; *Barnett* v. *County of Cook*, 373 Ill. 516; *Barnett* v. *County of Cook*, 388 Ill. 251.) The argument that "provisional" or "conditional"

judgments (using confession of judgment under a warrant as an example) have been recognized since earliest days is mere sophistry. The judgments here contemplated are neither provisional nor conditional but are just as final as any judgment rendered by the court itself. Of course they may be set aside under certain circumstances, but that is also true of any judgment. We agree with the trial court that sections 5b and 5c are in violation of due process and unconstitutional.

The next question is whether section 5a, as well as sections 5b and 5c, violates the separation-of-powers article of our constitution. It is asserted by the Director that the entry of judgment by the circuit clerk is a ministerial act and that no judicial determination is involved.

From the earliest days this court has been firm in resisting attempts to invade the powers of the judicial department. In *Hall* v. *Marks*, 34 Ill. 358, under article II of the constitution of 1848, which is similar to our present article III, it was held that a default judgment could not be rendered and entered by the clerk of a court. It was stated that the power to adjudicate, determine and *render* a judgment is a judicial act and must be by judicial authority, while the *entering* of judgment by a clerk is a ministerial act which follows the rendition of a judgment by the court. The practice of masters in chancery issuing injunctions under a statute unchallenged for more than 75 years was struck down in *Bottom* v. *City of Edwardsville*, 308 Ill. 68, as violative of the separation-of-powers article. Masters were declared to be ministerial officers, as are clerks of the courts, and judicial power could not be conferred upon them. More recently the converse of the situation was before us in *Agran* v. *Checker Taxi Co.* 412 Ill. 145. There, a statute placing a restriction on the power of the courts to render a judgment was held to be unconstitutional as an infringement upon the inherent constitutional powers of the courts.

It is suggested that a judgment under this legislation

is "nothing more than a sort of additional or inchoate lien or attachment, spread of record in the office of the clerk, and authorizing the seizure but not sale of the debtor's property." We repeat what was said with respect to the due process argument, that the judgments under these sections are just as final as judgments rendered by the court. This is demonstrated by section 5a which authorizes execution to issue, and specifically makes all laws applicable to sales on execution applicable to sales under these judgments. If the judgments were to be mere liens there was no necessity for the amendment, since the statute already contained adequate lien provisions.

It is strenuously argued that this is similar to "confession of judgment" procedure by clerks in vacation. We think the distinction is obvious. A confession on a warrant of attorney involves the consent in writing by a debtor to the appearance of an attorney in his behalf with authority to confess a judgment in a fixed amount, while judgments contemplated by these amended sections must be entered by ministerial officers upon rendition of assessments by an executive department of the State government. Such judgments would be based upon findings of the Department of Revenue without any action of, or rendition by, the circuit court in which the judgments are to be entered. The element of consent is wholly lacking in this statutory procedure.

We have read with interest the opinion in *People* v. *Skinner* 18. Calif. 2d 349, 115 P.2d 488, and *Liebhardt* v. *Department of Revenue,* 123 Colo. 369, 229 P.2d 655, but are not persuaded that we should depart from our long established principles in construing the separation-of-powers article.

As stated in the memorandum opinion of the able trial judge: "It would be strange indeed if the legislature, constitutionally powerless to direct the entry of a judgment by the court itself, could direct the entry of a judgment by the clerk of such court to the same effect as though entered by

the court and thereby indirectly accomplish that which it could not constitutionally do directly." We agree.

In referring to section 5a procedure, counsel for the Director says that it merely eliminates the formal step of filing suit and when viewed in that light, "it appears less drastic and revolutionary and emerges for what it really is —a more expeditious remedy for obtaining what the State has been entitled to all along." While we may sympathize with the desire of the State to collect its revenues as quickly as possible, it is our duty to see that such collections are made by constitutional means. This legislation circumvents the courts and cannot be justified by desirability or necessity.

For the reasons indicated sections 5a, 5b and 5c are unconstitutional and void, and the order of the circuit court of Warren County denying the petition for *mandamus* is affirmed.

*Judgment affirmed.*